******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# VIRGINIA SILANO *v.* DIANA COONEY ET AL.
## (AC 45538)

Bright, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant police officer for malicious prosecution arising out of the criminal prosecution of the plaintiff for a violation of conditions of release in the second degree pursuant to the applicable statute ((Rev. to 2011) § 53a-222a). The plaintiff, C and G were all members of the same lake association. According to allegations in the plaintiff's complaint, in 2012, the defendant opened an investigation after C and G falsely stated that the plaintiff had violated a no contact order with C, by making an obscene gesture toward C and G while they were on the premises of the lake association. During his investigation, the defendant took sworn statements from C and G, spoke with another association member, D, regarding the incident, and obtained video surveillance footage from the association. The defendant reviewed the surveillance footage and made notes while doing so, which indicated that the footage did not capture the plaintiff communicating with C on the day of the incident. Thereafter, the defendant returned the video footage to the association, and it was later erased. The defendant submitted an arrest warrant affidavit that included the sworn statements from C and G, D's statements, and the defendant's notes regarding the surveillance footage. The plaintiff was arrested, and, in 2016, the charges against her were dismissed. The plaintiff commenced the present action in 2018. The defendant filed a motion for summary judgment, claiming that the action was untimely, that there was probable cause for the challenged prosecution, and that the defendant had relied in good faith on the prosecutor's independent probable cause determination. In response, the plaintiff argued, inter alia, that certain evidence submitted by the defendant contained inadmissible hearsay and that her complaint charged the defendant with malicious prosecution through intentional spoliation. Thereafter, the plaintiff filed a motion for summary judgment. The trial court granted the defendant's motion, concluding that the defendant met his burden of demonstrating the absence of any genuine issue of material fact that the arrest warrant was supported by probable cause and, therefore, that he was entitled to judgment as a matter of law. The trial court denied the plaintiff's motion, determining that she did not successfully assert a claim for intentional spoliation of evidence. On the plaintiff's appeal to this court, *held*:

1. The trial court properly granted the defendant's motion for summary judgment because it did not err in determining that the defendant met his burden of demonstrating the absence of any genuine issue of material fact that the arrest warrant was supported by probable cause: contrary to the plaintiff's contention that the defendant improperly relied on the sworn statements of C and G, which she contends he credited over the statements of the plaintiff and D and the video surveillance evidence, the defendant was permitted to rely on the complaints of third parties to establish probable cause, in this case the putative victim and an eyewitness; moreover, the defendant considered the available exculpatory evidence and identified it in his arrest warrant affidavit, including D's statements that the plaintiff did not have contact with C and G and the defendant's surveillance video notes, which indicated that the footage did not capture the plaintiff communicating with C, and the plaintiff failed to submit evidence to demonstrate a genuine issue of material fact as to the lack of probable cause; furthermore, whether the defendant acted with malice was not addressed by the trial court and was not at issue on appeal, and, contrary to the plaintiff's assertions, the defendant's state of mind did not negate the existence of probable cause.

2. The trial court properly rejected the plaintiff's arguments regarding spoliation of evidence: contrary to the plaintiff's assertion, her claimed entitlement to an adverse inference with respect to the surveillance video evidence was insufficient on its own to create a genuine issue of material fact as to the want of probable cause element for the purposes of

defeating summary judgment, and, because the plaintiff failed to adduce any evidence to support want of probable cause, the trial court properly concluded that there was no genuine issue of material fact as to that issue; moreover, the plaintiff did not plead intentional spoliation of evidence as a separate cause of action in her complaint, and, even if this court were to construe her complaint as alleging such a separate cause of action, it failed as a matter of law on the first essential element of a claim for intentional spoliation, namely, that the defendant had knowledge of a pending or impending civil action involving the plaintiff, as the defendant returned the video to the association, its rightful owner, in 2012, and the plaintiff did not file her malicious prosecution claim until 2018; accordingly, no bona fide or rational argument could be made that, under the circumstances, the defendant knew or should have known that his return of the video in 2012 would be relevant to a malicious prosecution claim asserted by the plaintiff six years later.

3. This court declined to review the plaintiff's claim that the trial court should not have considered the defendant's notes relating to the surveillance video in addressing his motion for summary judgment because the notes did not satisfy the state of mind exception to the hearsay rule set forth in the Connecticut Code of Evidence (§ 8-3 (4)) and, as such, were inadmissible hearsay: the trial court determined that the notes satisfied the business records exception to the hearsay rule set forth in the applicable statute (§ 52-180), and the plaintiff abandoned any claim of error regarding the admissibility of the notes under that exception because she did not brief it; accordingly, it was uncontested that the notes were considered properly under the business records exception to the hearsay rule.

Argued October 10, 2023—officially released February 13, 2024

*Procedural History*

Action to recover damages for malicious prosecution, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the plaintiff withdrew her claims against the defendant Diane Gromley et al.; thereafter, the court, *Stevens*, *J.*, granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court, *Alvord*, *Suarez* and *Lavine*, *Js.*, which affirmed the judgment of the trial court; subsequently, the court, *Stevens*, *J.*, granted the motion for summary judgment filed by the defendant Kevin Hammel and denied the plaintiff's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed. *Affirmed.*

*Virginia Silano*, self-represented, the appellant (plaintiff).

*Dennis M. Durao*, with whom, on the brief, was *Kimberly A. Bosse*, for the appellee (defendant Kevin Hammel).

*Opinion*

ALVORD, J. The self-represented plaintiff, Virginia Silano, appeals from the summary judgment rendered by the trial court in favor of the defendant Kevin Hammel on count two of the plaintiff's complaint alleging malicious prosecution.[1] On appeal, the plaintiff claims that the court improperly (1) rendered summary judgment in favor of the defendant on her malicious prosecution claim, (2) rejected her arguments with respect to intentional spoliation, and (3) admitted into evidence the defendant's contemporaneous notes regarding his viewing of a surveillance video that the plaintiff contends the defendant failed to preserve.[2] We affirm the judgment of the court.

The following procedural history is relevant to our resolution of this appeal. This action was commenced on June 27, 2018. The fourth amended, and operative, complaint was filed on December 10, 2019. The second count alleges malicious prosecution against the defendant, arising out of the criminal prosecution of the plaintiff for violation of General Statutes (Rev. to 2011) § 53a-222a,[3] which charge ultimately was dismissed.

In her complaint, the plaintiff alleged that, on or about August 9, 2012, Trumbull police officer Michael Takacs "investigated an incident initially reported by the plaintiff wherein the plaintiff was being actively harassed by [Diana Cooney and Diane Gromley]. At that time . . . Cooney stated to Officer Takacs that a condition of release was imposed upon the plaintiff prohibiting the plaintiff from communicating with . . . Cooney. Officer Takacs reported that he did not believe a violation of the [no contact] order occurred." The plaintiff alleged that the defendant, also a Trumbull police officer, commenced an investigation following "false statements" by Cooney and Gromley that the plaintiff had violated the no contact order by "giving . . . Cooney and Gromley the 'finger' in the presence of their children" on the premises of the Pinewood Lake Association (association). The plaintiff alleged that the defendant "initiated, instigated or procured the plaintiff's arrest without probable cause . . . ." The plaintiff alleged that, although the defendant took sworn statements from Cooney and Gromley, he "failed to take or memorialize in any way his interview with [Brad] Day (who has since passed away), a neutral eyewitness to the events of August 9, 2012." The plaintiff alleged that Day's statement was that "the plaintiff did not communicate with Cooney and Gromley" and that "Cooney and Gromley were harassing and instigating the plaintiff." The plaintiff alleged that, contrary to Cooney's and Gromley's statements that their children were present at the time of the alleged violation of the order, the children actually were approximately twenty feet away in the water.

The plaintiff alleged that, "[i]n the course of [the defendant's] investigation, [the defendant] took possession and control of the video surveillance system owned and operated by the [association]. . . . At all times, the plaintiff believed and trusted that [the defendant] preserved and protected the video evidence and that it would be available to the plaintiff to demonstrate not only the falsehood of Cooney['s] and Gromley's August, 2012 statements but to demonstrate the ongoing harassment and abuse sustained by the plaintiff as a result of . . . Cooney's actions. . . . In December of 2012, [the defendant] submitted a warrant for the plaintiff's arrest which included Gromley['s] and Cooney's false statements and [the defendant's] interpretation of the surveillance evidence. The plaintiff was arrested in January of 2013, pursuant to [the defendant's] warrant." The plaintiff alleged that the defendant had a duty to preserve and maintain the video surveillance evidence, which the plaintiff alleged would have demonstrated that Cooney's and Gromley's statements were false. The plaintiff alleged that the defendant "was aware of the value of . . . Day's statement and the video evidence to the plaintiff and nevertheless acted with official animus by making a conscious effort to destroy or suppress the evidence." The plaintiff alleged that the video surveillance evidence was "relevant, material, essential and irreplaceable to establish Cooney['s] and Gromley's actions before, during and after" the claimed violation and "its absence deprived the plaintiff" of her defense on the criminal charge.

The plaintiff further alleged that the defendant had a personal relationship with Cooney's husband, George Cooney, who was president of the association and a former police officer. The plaintiff alleged that the defendant "falsified inventory records as to the same surveillance system, which was material and relevant to the plaintiff's defense of false criminal felony charges instigated by George Cooney and others on or about February 8, 2011, and was pivotal, relevant and material to the plaintiff's successful civil malicious prosecution and conspiracy action of George Cooney."

The plaintiff alleged that she had been damaged by "the deprivation of justice" resulting from the defendant's claimed aiding and abetting Cooney's and Gromley's false and malicious prosecution of the plaintiff and the defendant's "conscious destruction, suppression or loss of relevant and material evidence," which deprived the plaintiff of its use to institute a civil action against Cooney and Gromley and to establish that Cooney and Gromley were actively harassing the plaintiff. The plaintiff alleged that she has suffered severe emotional distress as a result of the defendant's actions.

The plaintiff alleged that a trial was held "in November of 2013 for the false charges which ended in a mistrial after [the defendant] violated an evidence order

set by the court.'' The criminal charges against the plaintiff were dismissed on July 1, 2016.

On October 29, 2021, the defendant filed the operative answer and five special defenses, including a special defense alleging that the plaintiff's malicious prosecution claim was barred by the statute of limitations set forth in General Statutes § 52-577.

On March 5, 2020, the defendant filed a motion for summary judgment, accompanying exhibits, and a memorandum of law in support, wherein he argued, inter alia, that no genuine issues of material fact existed and that he was entitled to judgment as a matter of law because the plaintiff's action was untimely, there was probable cause for the challenged prosecution, and the defendant relied in good faith on the prosecutor's independent probable cause determination. On May 14, 2021, the plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment and accompanying exhibits. In her opposition, the plaintiff argued that certain evidence submitted by the defendant contained inadmissible hearsay. The plaintiff further argued that her complaint ''charges [the defendant] with malicious prosecution through spoliation and intentional spoliation.'' She argued that ''the adverse inference doctrine should defeat [the defendant's] probable cause argument.'' The defendant filed a reply on June 2, 2021. With respect to spoliation, he first argued that the plaintiff improperly had raised her claim of intentional spoliation for the first time in her opposition to the defendant's summary judgment motion. In addition, he argued that, even if the second count of her complaint could be read to include a claim of spoliation of evidence, such claim was barred by the statute of limitations contained in § 52-577. Third, he contended that the plaintiff had not demonstrated that she would be entitled to an adverse inference. As to probable cause, the defendant argued, inter alia, that the plaintiff had failed to demonstrate a lack of probable cause.

On July 15, 2021, the plaintiff filed a motion for summary judgment, seeking judgment in her favor on the malicious prosecution claim. On August 30, 2021, the defendant filed a memorandum of law in opposition to the plaintiff's motion for summary judgment. The plaintiff filed a reply on September 9, 2021. On January 10, 2022, the plaintiff filed a supplemental memorandum in opposition to the defendant's motion for summary judgment and in support of her own motion for summary judgment and accompanying exhibits. Oral argument was held on January 25, 2022.

On May 12, 2022, the court, *Stevens*, *J.*, issued a memorandum of decision in which it granted the defendant's motion for summary judgment and denied the plaintiff's motion. The court concluded that the defendant met his burden of demonstrating the absence of any genuine issue of material fact that the arrest warrant

was supported by probable cause and, accordingly, the defendant was entitled to judgment as a matter of law. Specifically, the court considered that "Judge Iannotti issued an order as a condition of the plaintiff's release on criminal charges then pending against her precluding the plaintiff from having contact with certain individuals including Cooney. . . . On August 9, 2012, the defendant received a text message from George Cooney, informing the defendant that Cooney had claimed that the plaintiff gave her the finger in front of their daughters. . . . Cooney sent a sworn statement to the defendant on August 10, 2012 . . . where Cooney stated that the plaintiff waved at her and, after she did not respond, the plaintiff stuck up her middle finger. . . . The defendant received a sworn statement from Gromley on August 15, 2012, which substantially corroborated Cooney's statement. . . . The statements from Cooney and Gromley both denied that Day was present when the incident occurred. . . . The defendant also reviewed the videos from the [association] surveillance system and took contemporaneous notes of the subject matter depicted, with corresponding time stamp[s]. . . . In both the defendant's incident report and arrest warrant affidavits, the defendant disclosed exculpatory information that the videos did not capture the plaintiff communicating with Cooney." (Citations omitted.) On the basis of this evidence, the court determined, as a matter of law, that the defendant acted with probable cause in seeking the arrest warrant.

Regarding the plaintiff's claim that she had alleged the tort of intentional spoliation, the court first noted that "it is questionable whether the allegations of the plaintiff's complaint are sufficient to satisfy all of the elements for this cause of action . . . ." The court concluded that, "[b]ased on [the] facts, as a matter of law, the plaintiff cannot successfully assert a claim for intentional spoliation of evidence." Specifically, the court found that the plaintiff could not satisfy the first element of an action for intentional spoliation of evidence, " 'the defendant's knowledge of a pending or impending civil action involving the plaintiff.' " See *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 244–45, 905 A.2d 1165 (2006).

The court stated: "As a matter of law, the defendant's return of the video in October, 2012, has nothing to do with the plaintiff's malicious prosecution action here because this action was filed years later in 2018. Stated differently, contrary to the plaintiff's position, the cause of action for intentional spoliation of evidence is based on the destruction of evidence that is done with the intent to make the evidence unavailable in a pending or impending civil action involving the plaintiff. Here, the defendant was under no legal obligation to retain this video for six years and not return it to its rightful owner when no civil action between the parties was pending or impending. The video did not belong to the

defendant, and he had a legal obligation to return the video to its rightful owner. Furthermore, no bona fide or rational argument can be made that under the circumstances presented the defendant knew or should have known that his return of this video in 2012 would be relevant to a malicious prosecution claim asserted by the plaintiff some six years later. As a matter of law, no malicious prosecution action could have been instituted or contemplated when the defendant returned the video to the [association] because at that time, the criminal complaint against the plaintiff, on which her malicious prosecution claim is based, had not even been instituted or adjudicated. It is obviously impossible for anyone to contemplate the assertion of a malicious prosecution claim before the prosecution itself even exists. The plaintiff's arguments to the contrary are rejected. Indeed, nothing in the plaintiff's complaint explicitly alleges that the video was returned to its owner specifically in order to disrupt the plaintiff's ability to assert the present malicious prosecution claim between the plaintiff and the defendant." (Emphasis omitted.)

Before turning to the plaintiff's claims on appeal, we set forth the relevant standard of review. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the non-moving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [or to deny a] motion for summary judgment is plenary." (Footnote omitted; internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, 216 Conn. App. 530, 539–40, 285 A.3d 1128 (2022).

## I

The plaintiff's first claim on appeal is that the court improperly rendered summary judgment on her malicious prosecution claim. Specifically, she contends that the court erred in determining that probable cause existed and maintains that "[t]he defendant correctly argued that probable cause is a complete defense to malicious prosecution, but both the defendant and the court ignored the plaintiff's case. The resolution of probable cause in this case required the determination of what material facts were known to the defendant before he submitted his arrest warrant affidavit but did not report in his arrest warrant affidavit." We are not persuaded that the court erred in determining that the defendant met his burden of demonstrating the absence of any genuine issue of material fact that the arrest warrant was supported by probable cause.

We begin with the applicable legal standards. An action for malicious prosecution "requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale* v. *W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982); see also *Mulligan* v. *Rioux*, 229 Conn. 716, 731–32 n.19, 643 A.2d 1226 (1994) ("[i]n addition to malice, [a]n action for malicious prosecution . . . requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; [and] (3) the defendant acted without probable cause" (internal quotation marks omitted)); *Vandersluis* v. *Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978) (" 'The existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law.' *Brodrib* v. *Doberstein*, 107 Conn. 294, 296, 140 A. 483 [1928]. And, as previously stated, want of probable cause may not be inferred from proof of malice.").

"Probable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he [or she] has reasonable grounds for prosecuting an action. . . . Mere conjecture or suspicion is insufficient. . . . Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable. . . . Although want of probable cause is negative in character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding." (Citations omitted; internal quo-

tation marks omitted.) *Mulligan* v. *Rioux*, supra, 229 Conn. 739.

In concluding that the defendant acted with probable cause in submitting an arrest warrant affidavit charging the plaintiff with violation of § 53a-222a, the court considered the following: the February 3, 2012 transcript of proceedings before Judge Iannotti in which the plaintiff acknowledged that a no contact order was in existence that extended to Cooney; the defendant's statement in the arrest warrant affidavit that he received a text message from George Cooney, informing the defendant that his wife, Cooney, had reported that the plaintiff gave her the middle finger in front of their daughters; the defendant received a sworn statement dated August 9, 2012, in which Cooney stated that the plaintiff waved at her and, after she did not respond, the plaintiff stuck up her middle finger; the defendant received a sworn statement dated August 15, 2012, in which Gromley substantially corroborated Cooney's statement, particularly that the plaintiff had given them the middle finger; the statements of both Gromley and Cooney that Day was not with the plaintiff at the time of the incident; and the defendant's notes from his viewing of the videos from the association surveillance system that indicated that the videos did not capture the plaintiff communicating with Cooney.

The plaintiff argues on appeal that "there are two points of contention factoring against probable cause which were known to the defendant and not reported in his warrant."[4] She argues first that the "conditions relied upon to establish the general intent element of the crime charged did not occur" and, second, that the defendant had a "duty to report facts from the video evidence . . . which further established Cooney and Gromley were not credible or reliable." We are not persuaded.

The plaintiff challenges the defendant's reliance on the statements of Cooney and Gromley, which she contends he credited over the statements of the plaintiff and Day and the video surveillance evidence. The plaintiff relies on case law stating that "[t]he scope of an arresting officer's obligation to consider exculpatory evidence is guided by two competing principles. On the one hand, once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Yet, on the other hand, an officer may not disregard plainly exculpatory evidence." (Internal quotation marks omitted.) *Marchand* v. *Hartman*, 395 F. Supp. 3d 202, 219 (D. Conn. 2019); see also *Martel* v. *South Windsor*, 562 F. Supp. 2d 353, 358 (D. Conn. 2008) ("In seeking an arrest warrant, a [p]olice officer . . . may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause. . . .

A failure to make further inquiry when a reasonable person would have done so may evidence a lack of probable cause." (Internal quotation marks omitted.)), aff'd, 345 Fed. Appx. 663 (2d Cir. 2009). The defendant responds by directing this court to case law providing that "[a] police officer may rely on the complaint of a third party to establish probable cause." *Craig* v. *Krzeminski*, 764 F. Supp. 248, 250 (D. Conn. 1991). "[I]t is well established that a law enforcement officer has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth. Furthermore, [t]he veracity of citizen [complainants] who are the victims of the very crime they report to the police is assumed." (Internal quotation marks omitted.) *Crocco* v. *Advance Stores Co.*, 421 F. Supp. 2d 485, 506 (D. Conn. 2006).

In the present case, the defendant considered the exculpatory evidence available and identified it in his arrest warrant affidavit. The arrest warrant affidavit included information related to Day, specifically that Day had approached Officer Takacs while he was speaking with Cooney and Gromley and "said that [the plaintiff] did not instigate contact with either Gromley or Cooney. He also said that both [women] are constantly trying to provoke [the plaintiff]."[5] The arrest warrant affidavit also included the defendant's notes from his viewing of the videos from the association surveillance system, which indicated that the videos did not capture the plaintiff communicating with Cooney. In response, the plaintiff did not submit evidence to demonstrate a genuine issue of material fact as to the lack of probable cause.

The plaintiff highlights in her appellate brief her concern with respect to "the defendant's uncontroverted history of abusing his authority by acting as [George] Cooney['s] and . . . Cooney's personal prosecutor, defense counsel and public relations officer." The recitation of the defendant's purported "history of bad acts" is relevant not to whether probable cause existed for the arrest warrant, but to showing that the defendant acted with malice, a distinct element of a claim of malicious prosecution that was not addressed by the trial court in the present case and is not at issue on appeal.

"In a malicious prosecution action, the defendant is said to have acted with malice if he [or she] acted primarily for an improper purpose; that is, for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based . . . such as the desire to occasion expense to the other party." (Citation omitted; internal quotation marks omitted.) *Mulligan* v. *Rioux*, supra, 229 Conn. 732. It is well established that "the plaintiff, to recover, must prove both want of probable cause and malice. While malice may be inferred from the want of probable cause,

proof of malice does not dispense with the necessity of proving want of probable cause." *Brodrib* v. *Doberstein*, supra, 107 Conn. 299; see also *Thompson* v. *Beacon Valley Rubber Co.*, 56 Conn. 493, 497, 16 A. 554 (1888) ("[T]here was considerable evidence of probable cause, enough it would seem to warrant the jury in finding that it existed. We must therefore assume that the jury so found. If so, that alone would entitle the defendant to a verdict irrespective of the question of malice."). Regardless of the plaintiff's recitation of circumstances that could be relevant to the question of malice, the defendant's state of mind does not negate the existence of probable cause.

Because the court properly concluded that the defendant met his burden of demonstrating the absence of any genuine issue of material fact that the arrest warrant was supported by probable cause, it properly rendered summary judgment on the plaintiff's malicious prosecution claim.

## II

The plaintiff's second claim on appeal is that the court improperly rejected her arguments with respect to intentional spoliation of evidence. She "requests that [this] court review the court's refusal to impose any sanction against the defendant for his spoliation of the video evidence as an abuse of discretion . . . . " We understand her contention to be that there necessarily must be a genuine issue of material fact as to the want of probable cause element for the purposes of defeating summary judgment based on her claimed entitlement to an adverse inference with respect to the surveillance video evidence. We conclude that the trial court properly rejected the plaintiff's arguments regarding spoliation.

We first set forth the relevant legal principles. As first recognized in *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 777–79, 675 A.2d 829 (1996), "[a]n adverse inference may be drawn against a party who has destroyed evidence only if the trier of fact is satisfied that the party who seeks the adverse inference has proven the following. First, the spoliation must have been intentional. . . . [There need not have been] an intent to perpetrate a fraud by the party or his agent who destroyed the evidence but, rather . . . the evidence [must have] been disposed of intentionally and not merely destroyed inadvertently. . . .

"Second, the destroyed evidence must be relevant to the issue or matter for which the party seeks the inference. . . . Third, the party who seeks the inference must have acted with due diligence with respect to the spoliated evidence. . . . Finally . . . the trier of fact . . . is not required to draw the inference that the destroyed evidence would be unfavorable but . . . it may do so upon being satisfied that the above condi-

tions have been met." (Internal quotation marks omitted.) *Surrells* v. *Belinkie*, 95 Conn. App. 764, 770–71, 898 A.2d 232 (2006).

This court in *Perez* v. *Metropolitan District Commission*, 186 Conn. App. 466, 477, 200 A.3d 202 (2018), remarked that "the plaintiff does not cite any authority, nor are we aware of any, for the claim that a permissive adverse inference predicated on a party's intentional spoliation of evidence can serve to raise a genuine issue of material fact for the purposes of defeating summary judgment . . . ." The court nevertheless addressed the merits of the contention. Id. We do the same.

"Pursuant to *Beers*, a party suffering from spoliation cannot build an underlying case on the spoliation inference alone; for an underlying claim to be actionable, the [party] must also possess some concrete evidence that will support the underlying claim. . . . Accordingly, in the context of summary judgment, a plaintiff cannot displace the evidentiary foundation necessary to raise a genuine issue of material fact with the mere supposition that an adverse inference will be instructed at trial." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 477–78; see also *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 238 ("a plaintiff in a product liability action cannot rely solely on the spoliation inference to withstand a motion for summary judgment or a motion for a directed verdict; he must also have some independent concrete evidence of a product defect").

In the present case, the plaintiff has failed to adduce any evidence to support want of probable cause and, accordingly, the trial court properly concluded that there was no genuine issue of material fact as to this issue.

Although the plaintiff did not plead intentional spoliation of evidence as a separate cause of action in her complaint,[6] and the trial court recognized that "it is questionable whether the allegations of the plaintiff's complaint are sufficient to satisfy all of the elements for this cause of action," the trial court nevertheless analyzed the plaintiff's claim as purporting to allege a cause of action for intentional spoliation.

In *Rizzuto* v. *Davidson Ladders, Inc.*, supra, 280 Conn. 251, our Supreme Court recognized the tort of intentional spoliation of evidence as an independent cause of action. "[T]he tort . . . consists of the following essential elements: (1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." Id., 244–45.

In the present case, the trial court rejected the plain-

tiff's claim on the first essential element, concluding that, "[a]s a matter of law, the defendant's return of the video in October, 2012, has nothing to do with the plaintiff's malicious prosecution action here because this action was filed years later in 2018. Stated differently, contrary to the plaintiff's position, the cause of action for intentional spoliation of evidence is based on the destruction of evidence that is done with the intent to make the evidence unavailable in a pending or impending civil action involving the plaintiff. Here, the defendant was under no legal obligation to retain this video for six years and not return it to its rightful owner when no civil action between the parties was pending or impending. The video did not belong to the defendant and he had a legal obligation to return the video to its rightful owner. Furthermore, no bona fide or rational argument can be made that under the circumstances presented the defendant knew or should have known that his return of this video in 2012 would be relevant to a malicious prosecution claim asserted by the plaintiff some six years later. As a matter of law, no malicious prosecution action could have been instituted or contemplated when the defendant returned the video to the [association] because at that time, the criminal complaint against the plaintiff, on which her malicious prosecution claim is based, had not even been instituted or adjudicated. It is obviously impossible for anyone to contemplate the assertion of a malicious prosecution claim before the prosecution itself even exists. The plaintiff's arguments to the contrary are rejected. Indeed, nothing in the plaintiff's complaint explicitly alleges that the video was returned to its owner specifically in order to disrupt the plaintiff's ability to assert the present malicious prosecution claim between the plaintiff and the defendant." (Emphasis omitted.)

We agree with the trial court's analysis that, even were we to construe the plaintiff's complaint as alleging a cause of action for intentional spoliation, such claim fails as a matter of law on the first essential element of an intentional spoliation claim.[7]

### III

Finally, the plaintiff argues that the defendant's notes, found within the arrest warrant affidavit, should not have been considered by the court when addressing the defendant's motion for summary judgment because they constitute inadmissible hearsay. Specifically, she contends that the court improperly considered the notes under the state of mind exception to the hearsay rule codified at § 8-3 (4) of the Connecticut Code of Evidence.[8] The only notes expressly identified in the plaintiff's appellate brief as having been improperly considered, however, are those contemporaneous notes regarding the defendant's viewing of the surveillance video, which the trial court determined satisfied the

business records exception, codified at General Statutes § 52-180.[9] Because the plaintiff does not contest that the notes were admissible under that exception, we decline to review the plaintiff's claim.

The following additional procedural history is relevant. In its memorandum of decision, the court addressed several evidentiary issues raised by the plaintiff, including that the defendant's contemporaneous notes regarding his viewing of the surveillance video constituted inadmissible hearsay. Specifically, the plaintiff challenged the admissibility of the following passage in the arrest warrant affidavit: "Upon reviewing the video the affiant observed:

"Camera #2. 14:14:01 Silano arrives to the patio with one dog (not two as she stated) and sits at a table with other known persons. (Blonde haired woman in pink dress. Man in suit).

"Camera #2. 14:30:55 Silano leaves table with one dog. (It appears that from the time Silano arrives and leaves she is having a conversation with the people at the table).

"Camera #3 also picks up Silano leaving with one dog.

"Camera #6 14:31:15 Silano walking along grass toward parking lot. Then changes direction and walks toward beach/fence area near large tree. Stops briefly to pet dog. She is now facing mostly toward the fence/beach area.

"14:31:44 Silano walking along fence and then out of sight. At [no] time does any camera pick up evidence of Silano communicating with Cooney."

The court rejected the plaintiff's argument that the notes were inadmissible, concluding: "The parties' submissions indicate that the defendant obtained the surveillance videos owned and operated by the [association] in the course of his investigation. . . . Accordingly, there is no dispute that the defendant, a police officer assigned to investigate the reported incident, had a responsibility or duty to report what he observed in the videos as part of the investigation. The plain language of these entries indicates they were written by the defendant as result of his direct observation of the surveillance videos. There can be no bona fide dispute about the facts that the notes were made by the defendant contemporaneously with his observation of the tapes, and the making of these notes was fairly within the regular course of his investigation. Therefore, the defendant's notes as stated in the arrest warrant affidavit are admissible in these proceedings under the business records exception to the hearsay rule. The defendant's contemporaneous notes describe both Cooney and the plaintiff's actions to the extent that they were captured in the [association's] cameras. The defendant's notes explain that some of the plaintiff's actions were not captured due to a large tree blocking

the cameras without further speculations. Therefore, the defendant's contemporaneous notes and assertions in the arrest warrant affidavit satisfy the requisites of the business records exception . . . ." (Citations omitted.)

In her appellate brief, the plaintiff argues that the court "erred in admitting the defendant's conclusions of fact derived from the video evidence he spoiled." The only material she includes in her appellate brief as objectionable is the contemporaneous notes previously identified, and she argues that they were improperly admitted under the state of mind exception to the hearsay rule. She does not brief, however, any claim of error regarding the notes being admissible under the business records exception to the hearsay rule. See, e.g., *In re Probate Appeal of Nguyen*, 199 Conn. App. 498, 507, 236 A.3d 291 (2020) (noting that "[p]olice reports are normally admissible under the business records exception to the hearsay rule as set forth in . . . § 52-180" and that "[t]o be admissible under [that] exception, the report must be based entirely upon the police officer's own observations" (internal quotation marks omitted)). Accordingly, she abandons any claim of error based on the court's consideration of the notes under that exception. See *State* v. *Carattini*, 142 Conn. App. 516, 529–30, 73 A.3d 733 (defendant who briefed claim of error that statement was inadmissible as statement by coconspirator but failed to brief claim of error regarding statement being admitted as statement against penal interest had abandoned claim of error as to admission of statement as statement against penal interest), cert. denied, 309 Conn. 912, 69 A.3d 308 (2013). Even if the challenged material was inadmissible under the state of mind exception, the plaintiff's failure to challenge the material under the business records exception to the hearsay rule would leave uncontested that the material was considered properly under that exception. We, therefore, decline to reach the plaintiff's challenge to the admissibility of the defendant's notes under the state of mind exception to the hearsay rule.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Count one of the plaintiff's complaint alleged malicious prosecution against Diana Cooney. On January 9, 2020, the court rendered summary judgment in favor of Cooney on the basis that the plaintiff's claim was barred by the statute of limitations. Following the denial of the plaintiff's motion to reargue, the plaintiff filed an appeal with this court. This court affirmed the judgment of the trial court. *Silano* v. *Cooney*, 209 Conn. App. 904, 264 A.3d 211 (2021).

The plaintiff's original complaint in this action contained nineteen counts and also had named as defendants Diane Gromley and Christopher Kapteina, but the plaintiff withdrew the action against these defendants in 2019. Accordingly, all references in this opinion to the defendant are to Hammel.

[2] The plaintiff also claims on appeal that the trial court improperly determined that any claim for intentional spoliation of evidence was barred by the three year statute of limitations of General Statutes § 52-577. Because we conclude that the court properly rejected the plaintiff's arguments with respect to intentional spoliation on their merits, we need not reach the plaintiff's claim on appeal with respect to the statute of limitations.

[3] General Statutes (Rev. to 2011) § 53a-222a (a) provides: "A person is guilty of violation of conditions of release in the second degree when, while charged with the commission of a misdemeanor or motor vehicle violation for which a sentence to a term of imprisonment may be imposed, such person is released pursuant to subsection (b) of section 54-63c, subsection (c) of section 54-63d or subsection (c) of section 54-64a and intentionally violates one or more of the imposed conditions of release."

All references to § 53a-222a in this opinion are to the 2011 revision of the statute.

[4] At oral argument on the motion for summary judgment, the plaintiff stated that she "[did not] contest that the warrant on its face establishes probable cause" but contended that the defendant submitted it in "reckless disregard of the truth . . . ."

[5] The plaintiff argues that a December 24, 2018 affidavit of Michelle Kingsbury provides a "more accurate" version of Day's statement. The plaintiff describes the Kingsbury affidavit as "literally the only evidence against the defendant which establishes what he knew before he submitted his warrant which survived his spoliation purge." In the affidavit, Kingsbury avers that "Day also spoke to [the defendant] and stated that he witnessed the events of August 9, 2012 and that [the plaintiff] was being instigated by . . . Cooney but at no time did [the plaintiff] communicate with . . . Cooney in any way." The plaintiff highlights the distinction between the arrest warrant affidavit stating that Day reported that the plaintiff "did not instigate contact" with Cooney and Gromley and the Kingsbury recitation of Day's alleged statement that the plaintiff did not communicate with Cooney and Gromley. We note, however that the arrest warrant affidavit also included the statements of Cooney and Gromley, which both indicated that Day stated that he was with the plaintiff at the time of the incident and the plaintiff would not do "anything like this."

The defendant argues that Kingsbury's recitation of Day's alleged statement is hearsay and, thus, is inadmissible. Assuming, without deciding, that Kingsbury's recitation of Day's alleged statement was admissible, we conclude that probable cause would remain with the insertion of the Kingsbury version of Day's statement in the arrest warrant affidavit and, thus, the any dispute over the version of Day's statement was not material. See *Reese* v. *Garcia*, 115 F. Supp. 2d 284, 291 (D. Conn. 2000) ("[T]he first step in assessing the materiality of such omissions is to correct the allegedly defective affidavit by inserting the information withheld from the Superior Court Judge who issued the arrest warrant. . . . The second step is . . . [to determine] whether as a matter of law [the corrected affidavit] did or did not support probable cause." (Citation omitted; internal quotation marks omitted.)).

[6] The defendant directs this court to the plaintiff's representations during a December 9, 2019 hearing on her request to amend her complaint, during which she stated that she was not amending her complaint to add a new cause of action and that the cause of action was "still malicious prosecution, prosecution without probable cause."

[7] Accordingly, we need not reach the defendant's alternative ground for affirmance regarding judicial estoppel.

[8] Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule . . . (4) A statement of the declarant's then existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed. . . ."

[9] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."