******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VIVIAN PEREZ, ADMINISTRATRIX (ESTATE OF
ANDRES BURGOS) *v.* METROPOLITAN
DISTRICT COMMISSION
(AC 40610)

DiPentima, C. J., and Lavine and Harper, Js.

*Syllabus*

The plaintiff administratrix of the estate of the decedent sought to recover
damages from the defendant, a political subdivision of the state, for the
wrongful death of the decedent, who had drowned while swimming
with a group of friends in an undesignated swimming area of a lake
that is located in a recreational area owned and operated by the defen-
dant. The plaintiff alleged that the defendant had certain ministerial
duties that it failed to perform and that this nonfeasance was a direct
and proximate cause of the decedent's death. The defendant filed a
motion for summary judgment on the ground that the plaintiff's claim
was barred by the doctrine of governmental immunity pursuant to the
statute (§ 52-557n) that provides immunity for discretionary acts, but
not ministerial acts, of employees of political subdivisions. In her objec-
tion to the motion, the plaintiff claimed, inter alia, that the decedent
was an identifiable person subject to imminent harm and, thus, that an
exception to governmental immunity applied. The trial court granted
the motion for summary judgment on the ground of governmental immu-
nity and rendered judgment in favor of the defendant, from which the
plaintiff appealed to this court. *Held*:

1. The trial court properly concluded that the plaintiff failed to establish
that a genuine issue of material fact existed as to whether the decedent's
death was caused by the defendant's breach of a ministerial duty:
although the plaintiff claimed that certain deposition testimony of M,
who was responsible for safety at the subject lake at the time of the
incident, that she had made a lot of changes to the safety policies at
the lake prior to the incident but that she could not recall the changes
specifically without referencing a state manual from which the changes
had been derived and which the defendant could not produce, raised a
question of fact as to whether M's policy changes created ministerial
duties or whether they were communicated effectively to the persons
responsible for their implementation, the exhibits submitted by the
defendant in support of its motion for summary judgment clearly estab-
lished that the policies existing at the time of the incident did not create
ministerial duties with respect to preventing or rescuing an individual
from drowning in an undesignated swimming area, and M's inability to
recall changes she made to the safety policies was not a sufficient basis
alone to conclude that there was a material dispute of fact as to that
issue; moreover, the plaintiff's claim that, on the basis of the defendant's
failure to preserve the state manual, she was entitled to an adverse
inference that the defendant violated a ministerial duty, which in turn
established a dispute of material fact, was unavailing, as a plaintiff,
in the context of summary judgment, cannot displace the evidentiary
foundation necessary to raise a genuine issue of material fact with the
mere supposition that an adverse inference will be instructed at trial,
and the plaintiff here failed to adduce any evidence to support the
existence of a ministerial duty in conjunction with her claim for an
adverse inference.

2. The plaintiff could not prevail on her claim that because the decedent
was an identifiable person subject to an imminent risk of harm, there
was a genuine issue of material fact as to whether the defense of govern-
mental immunity was applicable, which was based on her claim that
the decedent was an identifiable victim because he was among a group
of specific individuals swimming in an area of the subject lake where
the defendant, through its employees, arguably knew unpermitted swim-
ming frequently occurred: there was no evidence that any of the defen-
dant's employees saw the decedent, or any member of his group, in the
undesignated swimming area prior to the incident, and in the absence
of some evidence that a person either was individually identifiable to

a public official or among a class of identifiable victims, which our precedent limits to school children attending public school during school hours, the first prong of the exception to governmental immunity could not be satisfied; accordingly, this court concluded that a group of individuals in an undesignated swimming area, whose presence is unknown to the defendant, could not be deemed identifiable for the purposes of the identifiable person, imminent harm exception, and, therefore, there was no genuine issue of material fact as to whether the plaintiff's claim was barred by the doctrine of governmental immunity.

Argued October 9—officially released December 11, 2018

*Procedural History*

Action to recover damages for the wrongful death of the plaintiff's decedent as a result of the defendant's alleged negligence, brought to the Superior Court in the judicial district of Hartford, where the court, *Shapiro*, *J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Daniel P. Scholfield*, with whom, on the brief, were *Steven J. Errante* and *Marisa A. Bellair*, for the appellant (plaintiff).

*Jack G. Steigelfest*, with whom was *Christopher M. Harrington*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. This case arises from the untimely death of Andres Burgos, who drowned while swimming in Lake McDonough, a recreational area that is owned and operated by the defendant, the Metropolitan District Commission.[1] The plaintiff, Vivian Perez, administratrix of the estate of Andres Burgos, appeals from the summary judgment rendered by the trial court in favor of the defendant on the basis of governmental immunity. On appeal, the plaintiff claims that the trial court erred in rendering summary judgment because there is a genuine issue of material fact with respect to (1) whether Burgos' death was caused by the defendant's breach of one or more of its ministerial duties, and (2) whether Burgos was an identifiable person subject to imminent harm. We are not persuaded and, accordingly, affirm the judgment of the trial court.

Viewed in the light most favorable to the plaintiff as the nonmoving party, the record reveals the following facts and procedural history. On July 9, 2011, Burgos and a group of friends went to Lake McDonough to swim. The lake is located principally in Barkhamsted, and its perimeter encompasses approximately 10.5 miles. At approximately 4 p.m., the group arrived at West Beach, which was one of three beaches on the lake that the defendant permitted the public to use during the late spring and summer months. Each of these beaches was adjacent to a designated swimming area, the boundaries of which were indicated by a string of red and white buoys. At each beach, the defendant also posted signs, in both English and Spanish, displaying the pertinent rules and regulations, including where swimming was permitted. Additionally, the defendant's employees conducted random boat patrols throughout the lake in order to locate individuals swimming outside of the designated areas.

After arriving at West Beach, Burgos and his friends followed a trail through the woods to an area of the lake colloquially known as "the Point." The group, including Burgos, entered the water from the Point and swam to a small island, referred to as First Island, approximately 250 feet from shore.[2] After reaching the island, the group started back to the shore. During the return journey, Burgos began to struggle before slipping underwater.

Upon realizing that Burgos had disappeared, members of the group swam to shore and ran back along the trail to West Beach to alert the defendant's lifeguards. Once informed of the incident, several lifeguards ran to the Point, entered the water and began to search for Burgos. Lifeguards from the other nearby beaches, notified over the radio of a possible drowning incident, soon arrived by boat to assist with the ongoing rescue. Despite the relatively close proximity of the island to the shore, the location where the group had

been swimming was estimated to be deeper than twenty feet in some places. The depth of the water impaired visibility and forced the defendant's lifeguards to confine their line search to the shallower areas. After searching and not finding Burgos in the shallow sections, some of the lifeguards dove down into the deeper parts of the channel. Approximately fifty-five minutes after Burgos was last seen, one of the lifeguards, performing a deep water dive, located him lying faceup on the lakebed. He was retrieved and transported to Hartford Hospital. Burgos was pronounced dead later that day at 5:50 p.m. The cause of death was determined to be asphyxia and drowning.

On May 2, 2013, the plaintiff commenced the present wrongful death action against the defendant. The operative complaint alleged a single count against the defendant predicated on General Statutes § 52-557n (a) (1) (A).[3] Specifically, the plaintiff alleged, inter alia, that the defendant had a ministerial duty (1) to prevent visitors from accessing and swimming in undesignated areas, (2) to conduct timely boat patrols, (3) to initiate a timely search for Burgos, (4) to contact the police, or call 911, in a timely fashion, and (5) to possess and maintain appropriate rescue equipment, but had failed to perform one or more of these responsibilities, and this nonfeasance was a direct and proximate cause of Burgos' death. On December 29, 2016, the defendant filed a motion for summary judgment on the ground that the plaintiff's claim was barred by the doctrine of governmental immunity pursuant to § 52-557n. In her objection to the motion, the plaintiff argued that the defendant had failed to meet its initial burden of negating the allegations of negligence as framed in the complaint, and, alternatively, that Burgos was an identifiable person subject to imminent harm, thus, creating an exception to governmental immunity.

In its memorandum of decision, dated June 16, 2017, the trial court concluded that the defendant had carried its burden of establishing that no genuine issue of material fact existed and granted the motion for summary judgment on the ground of governmental immunity. The court concluded that the plaintiff had failed to adduce evidence to raise a genuine issue of material fact as to the existence of a ministerial duty or that Burgos was an identifiable person subject to an imminent risk of harm. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the standard of review with respect to an appeal from a trial court's decision to grant a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a

motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which,under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 221–22, 131 A.3d 771 (2016).

I

The plaintiff's first claim is that the court erred in concluding that she had not established a genuine issue of material fact with regard to whether Burgos' death was caused by the defendant's breach of a ministerial duty.[4] In support of her argument, the plaintiff primarily relies on the deposition of Marcia Munoz, the individual responsible for safety at Lake McDonough at the time of the incident. Munoz testified that she made "a lot of changes" to the defendant's lifeguard policies prior to 2011, but that she could not recall these changes specifically without first referencing a state manual from which the changes were derived. The defendant, however, was unable to produce the state manual, as it was apparently lost at some point after Munoz' retirement. The plaintiff contends on appeal that, without knowing precisely what changes Munoz adopted, a reasonable jury could conclude that her changes created ministerial duties or that her changes were not communicated effectively to those responsible for their implementation.[5] Additionally, the plaintiff argues that the defendant's failure to preserve the state manual referenced in Munoz' testimony created a permissible adverse inference that the defendant violated a ministerial duty.

As a threshold matter, we acknowledge that the parties do not dispute that the defendant is a political subdivision and, therefore, entitled to the defense of governmental immunity. "With respect to governmental immunity, under . . . § 52-557n, a [political subdivision] may be liable for the negligent act or omission of [its] officer[s] acting within the scope of [their] employment or official duties. . . . The determining factor is whether the act or omission was ministerial or discretionary. . . . [Section] 52-557n (a) (2) (B) . . . explic-

itly shields a [political subdivision] from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . . In contrast . . . officers [of a political subdivision] are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) *Hull* v. *Newtown*, 327 Conn. 402, 407–408, 174 A.3d 174 (2017).

"[O]fficials [of a political subdivision] are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, [public officials] are not immune from liability for negligence arising out of their ministerial acts. . . . This is because society has no analogous interest in permitting [them] to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) *Ugrin* v. *Cheshire*, 307 Conn. 364, 390–91, 54 A.3d 532 (2012).

"There is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions." *Bonington* v. *Westport*, 297 Conn. 297, 308, 999 A.2d 700 (2010). "The hallmark of a discretionary act is that it requires the exercise of judgment. . . . If by statute or other rule of law the official's duty is *clearly* ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance. . . . [M]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . [E]vidence of a ministerial duty is provided by an explicit statutory provision, town charter, rule, ordinance or some other written directive." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Ventura* v. *East Haven*, 170 Conn. App. 388, 401–402, 154 A.3d 1020, cert. granted, 325 Conn. 905, 156 A.3d 537 (2017).

The plaintiff first argues that Munoz' deposition testimony creates a question of material fact similar to that which was presented in *Strycharz* v. *Cady*, 323 Conn. 548, 148 A.3d 1011 (2016). In *Strycharz*, the plaintiff, a high school student, was injured when he was struck by a car while leaving school grounds to smoke a cigarette

across the street. Id., 556–57. The incident occurred prior to the start of the school day, when school buses were arriving to drop off students. Id., 556. In an action against school officials, the plaintiff alleged, inter alia, that the defendant vice principals were liable in failing to execute their ministerial duty to assign school staff members to bus duty the morning of the incident. Id. 565–66. On appeal, our Supreme Court reversed in part the judgment of the trial court granting the defendants' motion for summary judgment. Id. 572–73. Our Supreme Court determined that the record did not support the trial court's decision to grant the motion for summary judgment with regard to the vice principals' ministerial duty to assign school staff to bus duty because an issue of fact remained as to whether they had distributed to staff members the roster that identified morning bus duty assignments. Id., 572. "After all, a bus duty roster by itself would be useless if it is not distributed to those charged with student supervision, informing them about their respective posts and schedule." Id. 566.

The present case is distinguishable from *Strycharz*. In *Strycharz*, it was undisputed that a ministerial duty existed; the issue was whether it had been followed. See id., 554–55, 569–573. Here, the plaintiff asks this court to speculate that the changes Munoz enacted created ministerial duties and that these changes were not communicated or implemented. "Although the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Tuccio Development, Inc.* v. *Neumann*, 111 Conn. App. 588, 594, 960 A.2d 1071 (2008). The exhibits submitted in support of the defendant's motion for summary judgment clearly established that the policies existing at the time of the incident did not create ministerial duties with respect to preventing or rescuing an individual from drowning in an undesignated swimming area.[6] We are not convinced that Munoz' inability to recall changes she made to the safety policies at Lake McDonough is a sufficient basis alone to conclude that there is a material dispute of fact as to this issue.

Alternatively, the plaintiff claims that, on the basis of the defendant's failure to preserve the state manual that Munoz used to amend the policies at Lake McDonough, she is entitled to an adverse inference that the defendant violated a ministerial duty, which in turn establishes a dispute of material fact as to this issue. Although the plaintiff does not cite any authority, nor are we aware of any, for the claim that a permissive

adverse inference predicated on a party's intentional spoliation of evidence can serve to raise a genuine issue of material fact for the purposes of defeating summary judgment, we will nevertheless address the merits of this contention.

As first recognized in *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 777–79, 675 A.2d 829 (1996), "[a]n adverse inference may be drawn against a party who has destroyed evidence only if the trier of fact is satisfied that the party who seeks the adverse inference has proven the following. First, the spoliation must have been intentional. . . . [There need not have been] an intent to perpetrate a fraud by the party or his agent who destroyed the evidence but, rather . . . the evidence [must have] been disposed of intentionally and not merely destroyed inadvertently. . . .

"Second, the destroyed evidence must be relevant to the issue or matter for which the party seeks the inference. . . . Third, the party who seeks the inference must have acted with due diligence with respect to the spoliated evidence. . . . Finally . . . the trier of fact . . . is not required to draw the inference that the destroyed evidence would be unfavorable but . . . it may do so upon being satisfied that the above conditions have been met." (Internal quotation marks omitted.) *Surrells* v. *Belinkie*, 95 Conn. App. 764, 770–71, 898 A.2d 232, 236 (2006). "Pursuant to *Beers*, a party suffering from spoliation cannot build an underlying case on the spoliation inference alone; for an underlying claim to be actionable, the [party] must also possess some concrete evidence that will support the underlying claim." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 238, 905 A.2d 1165 (2006).[7] Accordingly, in the context of summary judgment, a plaintiff cannot displace the evidentiary foundation necessary to raise a genuine issue of material fact with the mere supposition that an adverse inference will be instructed at trial. Cf. id. ("a plaintiff in a product liability action cannot rely solely on the spoliation inference to withstand a motion for summary judgment or a motion for a directed verdict; he must also have some independent concrete evidence of a product defect"). As the plaintiff here has failed to adduce any evidence to support the existence of a ministerial duty in conjunction with her claim for an adverse inference, the trial court properly concluded that there was no dispute of material fact as to this issue.

II

The plaintiff's second claim is that Burgos was an identifiable person subject to an imminent risk of harm and that, therefore, there is a genuine issue of material fact as to whether the defense of governmental immunity applies. Specifically, the plaintiff argues that Burgos was an identifiable victim because he was among a group of specific individuals in an area of Lake

McDonough where the defendant, through its employees, arguably knew unpermitted swimming frequently occurred. We disagree.

As we noted previously in this opinion, "governmental immunity precludes liability regardless of whether the duty is public or private as long as the act complained of is discretionary in nature and none of the three recognized exceptions[8] to discretionary act immunity applies." (Footnote added.) *Violano* v. *Fernandez*, 280 Conn. 310, 332, 907 A.2d 1188 (2006). One of these exceptions, which our Supreme Court describes as "very limited," arises "when the circumstances make it apparent to [a public official] that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . If the [plaintiff] fail[s] to establish any one of the three prongs, this failure will be fatal to [her] claim that [she] come[s] within the imminent harm exception."[9] (Internal quotation marks omitted.) *Brooks* v. *Powers*, 328 Conn. 256, 265–66, 178 A.3d 366 (2018). Because we conclude that Burgos was not an identifiable victim and/or within a class of identifiable victims, we further conclude that the exception does not apply.

"With respect to the identifiable victim element, we note that this exception applies not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. . . . [W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care. . . . In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 350–51, 984 A.2d 684 (2009). "The only identifiable class of foreseeable victims that we have recognized for these purposes is that of school children attending public schools during school hours." *Durrant* v. *Board of Edu-*

*cation*, 284 Conn. 91, 107, 931 A.2d 859, 869 (2007); see also *Jahn* v. *Board of Education*, 152 Conn. App. 652, 668–69, 99 A.3d 1230 (2014) (declining to expand class of identifiable victims to include students participating in after school athletic competition).

In support of her argument, the plaintiff relies on *Sestito* v. *Groton*, 178 Conn. 520, 528, 423 A.2d 165 (1979), "the case that created the identifiable person, imminent harm exception as we know it." *Haynes* v. *Middletown*, 314 Conn. 303, 333, 101 A.3d 249 (2014) (*Eveleigh, J.*, concurring). In *Sestito*, the plaintiff brought an action against the defendant municipality on behalf of the estate of an individual who had been shot and killed outside a bar. *Sestito* v. *Groton*, supra, 521–23. Prior to the shooting, a police officer employed by the defendant had been patrolling the area in his car and observed a group of men gathered in a parking lot near the bar. Id., 522. While observing the men, he witnessed an altercation begin between two of them that eventually devolved into a physical fight. Id., 523. Instead of intervening, the officer waited until one of the men was shot before he "drove over and arrested the assailant." Id. On appeal, our Supreme Court concluded, without describing the decedent as an identifiable victim,[10] that there was a question of fact as to whether the defendant's police officer owed a legal duty to the decedent to prevent the shooting from occurring. Id., 527–28.

The plaintiff submits that, just as the decedent in *Sestito* was identifiable despite the police officer not knowing who among the group of men would be shot, Burgos was identifiable because he was among a group of people swimming in Lake McDonough, any of whom could have fatigued suddenly and slipped underwater. The salient difference between the present case and *Sestito*, however, is that there is no evidence that any of the defendant's employees saw Burgos, or any member of his group, in the undesignated swimming area prior to the incident.[11] In the absence of some evidence that a person either was individually identifiable to a public official or among a class of identifiable victims, which our precedent limits to school children attending public school during school hours; see *Durrant* v. *Board of Education*, supra, 284 Conn. 107; the first prong of the exception to governmental immunity cannot be satisfied.

Indeed, the present case is analogous to *Evon* v. *Andrews*, 211 Conn. 501, 559 A.2d 1131 (1989), in which our Supreme Court "concluded that the imminent harm exception did not apply to the plaintiffs' decedents who were killed in an apartment house fire. Specifically, [the] court determined that [t]he class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of identifiable persons . . . ." (Internal quotation marks

omitted.) *Violano* v. *Fernandez*, supra, 280 Conn. 330. Similarly, we conclude that a group of individuals in an undesignated swimming area, whose presence is unknown to the defendant, cannot be deemed identifiable for the purposes of the identifiable person, imminent harm exception. Accordingly, there is no genuine issue of material fact as to whether the plaintiff's claim is barred by the doctrine of governmental immunity.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant "is a political subdivision of the state, specially chartered by the Connecticut General Assembly for the purpose of water supply, waste management and regional planning." *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 41, 881 A.2d 194 (2005).

[2] Although swimming was not permitted in this area, it was not uncommon for the defendant's boat patrol to find people swimming to and from the island.

[3] The operative complaint included a second count, which was brought pursuant to § 52-557n (a) (1) (B), alleging that the defendant was negligent "in the performance of functions from which the political subdivision derive[d] a special corporate profit or pecuniary benefit." The plaintiff conceded at oral argument before this court that this claim was withdrawn prior to the trial court's ruling on the motion for summary judgment. Accordingly, this appeal addresses only the first count of the plaintiff's operative complaint.

[4] The plaintiff also argued to the trial court and to this court that the defendant had failed to satisfy its initial burden of showing the absence of any genuine issue of material fact. At oral argument before this court, however, the plaintiff's counsel stated that he understood the trial court's conclusion to the contrary and, therefore, was not going "to waste this court's time arguing otherwise." Having reviewed the record and the affidavits appended to the defendant's motion for summary judgment, we agree with the trial court that the defendant's showing was sufficient to satisfy its initial burden.

[5] We note that this argument was not addressed in the trial court's memorandum of decision and, in reviewing the plaintiff's objection to the defendant's motion for summary judgment, we cannot say that it was clearly asserted. Nevertheless, given that the defendant has not objected to this argument being presented on appeal and that this position is, in effect, an expansion of a claim referenced in the plaintiff's opposition memorandum of law, we will address the merits in this particular circumstance. We caution, however, that it remains our practice not to review claims made for the first time on appeal. *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 229

[6] The materials included affidavits from the defendant's manager of Lake McDonough in 2011, the chief of the defendant's police department, and several lifeguards involved in the attempted rescue of Burgos. Also attached were photographs of the signs posted informing visitors of the rules and regulations at the lake and excerpts of deposition testimony from lifeguards concerning the events of July 9, 2011.

[7] Conversely, in *Rizzuto*, our Supreme Court recognized, as an independent cause of action, the tort of intentional spoliation of evidence. *Rizzuto* v. *Davidson Ladders, Inc.*, supra., 280 Conn. 251. "[T]he tort . . . consists of the following essential elements: (1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." Id. 244–45. Unlike the adverse inference acknowledged in *Beers*, the plaintiff alleging a claim of intentional spoliation of evidence need not produce evidence sufficient to establish a prima facie case, provided there is evidence that the defendant's intentional spoliation "rendered the plaintiff unable to establish a prima facie case in the underlying litigation." Id., 246.

Here, the plaintiff did not plead, as a separate cause of action, intentional spoliation of evidence. Therefore, even if the defendant's failure to preserve the state manual were to satisfy the requirements provided in *Beers*, the permitted adverse inference does not relieve the plaintiff of her burden to establish a prima facie case.

[8] The other two exceptions are provided in subdivision (2) of § 52-557n

(a) and are not relevant for the purposes of this appeal.

[9] Although the plaintiff's complaint does not name an individual to whom the imminent harm should have been apparent, our Supreme Court, in *Grady* v. *Somers*, 294 Conn. 324, 348, 984 A.2d 684 (2009), concluded that the "identifiable person, imminent harm common-law exception to . . . qualified immunity also applies in an action brought directly against municipalities pursuant to § 52-557n (a) (1) (A), regardless of whether an employee or officer of the municipality also is a named defendant."

[10] The term "identifiable victim" was not used until *Shore* v. *Stonington*, 187 Conn. 147, 156, 444 A.2d 1379 (1982); nevertheless, our courts have relied on *Sestito* in applying the exception. See, e.g., *Doe* v. *Board of Education*, 76 Conn. App. 296, 301, 819 A.2d 289 (2003).

[11] The affidavits and deposition testimony attached to the parties' summary judgment filings established that the area in which Burgos and his group were swimming was not visible from any of the three beaches where lifeguards were stationed and that although it may have been visible from the defendant's boathouse, there was no evidence that anyone saw Burgos or his group.

---