******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE *v.* LINDSEY S. BRETOUX ET AL.
## (AC 46506)

Bright, C. J., and Suarez and Harper, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant. The defendant asserted the special defenses of, inter alia, unclean hands and estoppel. He alleged that, commencing one month after he stopped making required payments on the note and continuing for a period of more than three and one-half years, the defendant submitted to C Co., the plaintiff's loan servicer, twenty-five applications to modify the terms of the underlying note and mortgage. Despite C Co.'s continuing encouragement to submit these applications, they all were denied for various reasons, including technical defects. The defendant alleged that the repeated denials caused him to incur additional debt due to the accrual of interest, fees, and other costs associated with his default. The trial court granted the plaintiff's motion for summary judgment as to the liability of the defendant, determining, inter alia, that, although the defendant's estoppel defense was legally sufficient, it did not dispel the defendant's liability for defaulting on the mortgage but, rather, only indicated that the amount of the interest, fees, and other costs had increased due to the plaintiff's alleged conduct. With respect to the defendant's unclean hands defense, the trial court found that the defendant failed to provide evidence beyond his own affidavit that proved that the plaintiff had engaged in wilful misconduct. Thereafter, the plaintiff filed a motion for a judgment of strict foreclosure and submitted an affidavit of debt that included the interest and fees that had accumulated on the note while the defendant was attempting to secure a loan modification. In response, the defendant filed a motion for a judgment of foreclosure by sale, which included an objection to the amount of the debt described in the affidavit, on the basis that the plaintiff wrongfully had increased the amount of the debt through its own misconduct. The trial court overruled the defendant's objection and rendered a judgment of foreclosure by sale. On the defendant's appeal to this court, *held*:

1. The trial court properly rejected the defendant's unclean hands defense in rendering summary judgment as to liability for the plaintiff because the defendant did not meet his burden of providing an evidentiary basis to establish the existence of a genuine issue of material fact: the only evidence the defendant submitted in support of his opposition to the plaintiff's motion for summary judgment was his affidavit, which asserted only bare allegations relevant to his unclean hands defense and did not provide a basis from which to infer that C Co., as the

plaintiff's agent, had engaged in wilful misconduct with the purpose of prejudicing the defendant's rights; moreover, there were no documents in the record demonstrating the plaintiff's allegedly improper handling of the defendant's loan modification applications, as the defendant did not submit the applications or any evidence of any communications between the defendant and C Co. regarding the applications, evidence of the specific nature of the technical difficulties identified in the applications, evidence as to the effect of the technical deficiencies on C Co.'s review of the applications, or evidence indicating whether the applications were subjected to any corrective actions following their denial; accordingly, the defendant's defense was based on mere speculation, in which this court would not engage.

2. The trial court improperly relied solely on the plaintiff's affidavit of debt to determine the amount of the debt, and, accordingly, this court reversed the judgment of foreclosure by sale and remanded the case for an evidentiary hearing on the amount of the debt: by objecting to the amount of the debt and specifically objecting as to why the amount of the debt was incorrect on the basis of his estoppel based special defense, the defendant sufficiently interposed a defense as to the amount of the debt, which prevented the plaintiff from relying on the affidavit of debt to prove the amount of the debt pursuant to the applicable rule of practice (§ 23-18 (a)); moreover, contrary to the plaintiff's claims, the defendant was not required to present evidence to preserve his objection to the plaintiff's affidavit of debt or to request an evidentiary hearing for the plaintiff to present its evidence in support of its motion for judgment because the defendant's objection to the amount of the debt precluded the application of Practice Book § 23-18 (a), and it was the plaintiff's burden to prove the amount of the debt.

Argued January 31—officially released May 14, 2024

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the defendant Newtown Savings Bank et al. was defaulted for failure to appear; thereafter, the defendant Fiore Bria was defaulted for failure to plead; subsequently, the court, *Cirello, J.*, granted the plaintiff's motion for summary judgment as to liability; thereafter, the court, *Cirello, J.*, rendered judgment of foreclosure by sale, from which the named defendant appealed to this court. *Reversed in part; further proceedings.*

*Melissa Kay*, certified legal intern, with whom were *Jeffrey Gentes*, and, on the brief, *Tyler Walls*, certified legal intern, for the appellant (named defendant).

*Jeffrey M. Knickerbocker*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. In this foreclosure action, the defendant Lindsey S. Bretoux[1] appeals from the trial court's judgment of foreclosure by sale in favor of the plaintiff, Deutsche Bank National Trust Company, as indenture trustee for New Century Home Equity Loan Trust 2005-2. On appeal, the defendant claims that the court improperly (1) rendered summary judgment as to liability in favor of the plaintiff because the defendant failed to establish a genuine issue of material fact as to his special defense of unclean hands and (2) failed to consider the defendant's estoppel defense when determining the amount of debt. We are not persuaded by the defendant's first claim, but we agree with his second claim. Accordingly, we reverse in part the judgment of the trial court.

The following facts, viewed in the light most favorable to the defendant, and procedural history are relevant to our analysis. On February 28, 2005, the defendant and Rosemary Ann Oquendo (Oquendo), formerly known as Rosemary Bretoux, his then wife, executed a mortgage in favor of New Century Mortgage Corporation (New Century) on property located at 40 Martha Place in Bridgeport, as security for a promissory note in the amount of $283,050. The defendant and Oquendo later divorced, and, pursuant to an October 6, 2016

---

[1] The complaint also named the following parties as additional defendants: the city of Bridgeport, Newtown Savings Bank, and Fiore Bria. The city of Bridgeport and Newtown Savings Bank were defaulted for failure to appear, and Fiore Bria was defaulted for failure to plead. Because those additional defendants have not participated in this appeal, we refer to Lindsey S. Bretoux as the defendant in this opinion.

dissolution of marriage decree, Oquendo was required to maintain the mortgage on the home and either sell the home or refinance the mortgage by November 1, 2026, to remove the defendant from the note and mortgage and to divide the existing equity in the home evenly with the defendant. In October, 2017, after the defendant learned that Oquendo had failed to make the required monthly payments under the note, he made three payments to bring the note current and continued to make the monthly payments for several months thereafter. After April, 2018, however, the defendant made no further payments. Thus, the defendant has been in default on the note and mortgage since May, 2018.

Beginning in June, 2018, the defendant began filing a series of applications to modify the terms of the note and mortgage. He filed those applications with Carrington Mortgage Services, LLC (Carrington), which serviced the loan for both New Century and the plaintiff, to which New Century assigned the note and mortgage in April, 2019. Oquendo conveyed her interest in the premises to the defendant by virtue of a quit claim deed that was recorded in the Bridgeport land records on December 14, 2018.[2] By the time that the plaintiff commenced the underlying foreclosure action against the defendant in October, 2019, the defendant already had filed seven unsuccessful applications for a loan modification with Carrington. In his November 14, 2019 answer, the defendant, who was self-represented at the time, admitted the essential allegations of the complaint, including that the note and mortgage had been in default since May 1, 2018, and that the plaintiff was the party entitled to collect the unpaid debt and enforce

---

[2] Oquendo was not named as a party in the underlying foreclosure action and consequently has not participated in the underlying action or in this appeal.

the mortgage. In the section of the answer entitled "Special Defenses," the defendant wrote: "I am working with the bank for a loan modification." In April, 2021, the defendant, through counsel, filed an amended answer and special defenses in which he averred that he lacked knowledge or information to form a belief as to the truth of the same allegations he previously had admitted and alleged, as special defenses, that (1) he was working with the plaintiff for a loan modification and (2) the note was modified by a 2010 loan modification.

On September 28, 2021, the plaintiff filed a motion for summary judgment as to liability, accompanied by a supporting memorandum of law.[3] On April 6, 2022, the defendant filed a memorandum in opposition to the plaintiff's motion for summary judgment. On that same day, the defendant also filed a second amended answer and special defenses, in which he asserted the special defenses of, inter alia, estoppel and unclean hands.[4] Specifically, the defendant alleged that, between June, 2018, and March, 2022, he applied to the plaintiff's loan servicer, Carrington, for a loan modification twenty-five times and that each application was denied for various reasons, including technical defects. The defendant further alleged that, following each denial, Carrington encouraged him to reapply and represented that the loan would be modified. The defendant alleged that the repeated denials of his loan modification applications over the course of nearly four years caused him to incur additional debt due to the accrual of interest, fees, and other costs associated with his default.

Consistent with these new special defenses, the defendant argued in his opposition to the plaintiff's

---

[3] The plaintiff previously had moved for summary judgment in October, 2020, but the plaintiff withdrew that motion when it filed its September 28, 2021 motion.

[4] Due to the plaintiff's failure to object to the defendant's request within fifteen days, the amended answer and special defenses were deemed to have been filed by consent. See Practice Book § 10-60 (a) (3).

motion for summary judgment that the plaintiff should be estopped from foreclosing on the property because Carrington repeatedly encouraged the defendant to file loan modification applications and then consistently denied those applications, often "for technical reasons such as paperwork not being in order." The defendant argued that the plaintiff's actions in connection with the modification process had "materially added to [the defendant's] debt, including, but not limited to, added . . . interest, attorney's fees, costs, etc., and substantially prevented [the defendant] from curing the default."

On June 23, 2022, the plaintiff filed a supplemental memorandum in support of its motion for summary judgment alleging, among other things, that the defendant's estoppel and unclean hands defenses failed to raise a genuine issue of material fact and were legally insufficient. On August 8, 2022, the defendant filed a supplemental objection to the plaintiff's motion for summary judgment, reiterating his argument that, because the plaintiff's misconduct during the modification process had caused him to incur costs that impeded his ability to cure any default under the note and mortgage, the plaintiff should be precluded from foreclosing on the property.

On October 21, 2022, after a hearing, the trial court issued a memorandum of decision granting the plaintiff's motion for summary judgment. After determining that there was no genuine issue of material fact as to the plaintiff's prima facie case that the defendant had defaulted under the note and mortgage and that the plaintiff was entitled to enforce those obligations, the court concluded, inter alia, that, although the defendant's estoppel defense was legally sufficient, it did "not dispel of the defendant's liability for defaulting on the mortgage but, rather, only indicates that the amount of interest, fees, and other costs ha[d] increased due

to the plaintiff's alleged conduct." As to the defendant's unclean hands defense, the court concluded that the defendant "failed to prove that the plaintiff ha[d] engaged in wilful misconduct. Specifically, the defendant ha[d] failed to provide evidence beyond his own affidavit, which evinces the plaintiff's continuous and meritless rejection of his mortgage modification application."[5] Accordingly, the court rendered summary judgment as to liability for the plaintiff.

Thereafter, on February 22, 2023, the plaintiff filed a motion for a judgment of strict foreclosure. On April 19, 2023, the plaintiff submitted an affidavit of debt that identified the interest and fees that had accumulated since May 1, 2018, including during the more than three and one-half years when the defendant was attempting to secure a loan modification from the plaintiff.[6] On April 21, 2023, the defendant filed a motion for a judgment of foreclosure by sale, which also included his objection to the plaintiff's motion for judgment of strict foreclosure. The defendant objected to the amount of debt described in the plaintiff's affidavit on the basis that the plaintiff wrongfully increased the amount of the debt through its own misconduct. The defendant specifically challenged only a portion of that debt amount, namely, $30,968.59, which included $30,663.59 in interest and $305 for a property inspection fee. On April 24, 2023, the court overruled the defendant's objection. The court's order stated that "the argument that the defendant was damaged as a result of the twenty-five applications for loan modification is not persuasive and has been addressed by the court in its

---

[5] The court also concluded that the defendant's other special defenses were legally insufficient, which conclusion the defendant has not challenged on appeal.

[6] The plaintiff's affidavit of debt reflected that the plaintiff had charged $30,663.59 in interest at a rate of 4.875 percent from April 1, 2018, to April 2, 2023.

memorandum granting the plaintiff's motion for summary judgment. Regarding the request that the judgment be for foreclosure by sale, the court will use the defendant's appraisal so the judgment will be [foreclosure by] sale." On the same date, the court rendered a judgment of foreclosure by sale and ordered the sale to take place on August 5, 2023. On the basis of the affidavit of debt and the appraisal filed by the plaintiff on April 19, 2023, the court found the amount of the debt was $401,570.56 as of April 2, 2023, and that the fair market value of the property was $475,000. This appeal followed.

We first set forth the applicable standard of review and relevant legal principles. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . A material fact is one that makes a difference in the outcome of a case. . . .

"Summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"[T]o establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure . . . have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case

and the defendant fails to assert any legally sufficient special defense. . . .

"[T]he party raising a special defense has the burden of proving the facts alleged therein. . . . If the plaintiff in a foreclosure action has shown that it is entitled to foreclose, then the burden is on the defendant to produce evidence supporting its special defenses in order to create a genuine issue of material fact . . . . Legally sufficient special defenses alone do not meet the defendant's burden. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . Further . . . [t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings. . . . [B]ecause any valid special defense raised by the defendant ultimately would prevent the court from rendering judgment for the plaintiff, a motion for summary judgment should be denied when any [special] defense presents significant fact issues that should be tried." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Mangiafico*, 198 Conn. App. 722, 726–27, 234 A.3d 1115 (2020).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *U.S. Bank, N.A.* v. *Foote*, 151 Conn. App. 620, 630–31, 94 A.3d 1267, cert. denied, 314 Conn. 930, 101 A.3d 952 (2014).

## I

The defendant first claims that the court improperly rendered summary judgment against him as to liability on the foreclosure complaint because genuine issues of material fact exist with respect to his special defense of unclean hands.[7] More specifically, the defendant claims that the court erred in its analysis of the evidence needed to support a defense in the face of a motion for summary judgment. The defendant argues that, although the court correctly concluded that he sufficiently alleged the defense of unclean hands, it erroneously concluded that "he did not adequately support his claim because he 'failed to provide evidence beyond his own affidavit . . . .' " The defendant further argues that his affidavit listing twenty-five dates on which his applications for a loan modification were denied is sufficient evidence on its own to show the " 'continuous and meritless' " rejections of his loan modification applications, thereby creating a genuine issue of material fact as to whether the plaintiff engaged in intentionally wrongful conduct during the loan modification process that substantially prevented the defendant from curing the default. We are not persuaded.

Because an action to foreclose a mortgage is an equitable proceeding, the doctrine of unclean hands is a viable special defense. "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court.

---

[7] The defendant does not challenge the court's conclusion that the plaintiff met its burden of establishing its prima facie case in this foreclosure action. The court determined there was no genuine issue of material fact that the defendant has been in default of the mortgage note since May 1, 2018, that the plaintiff has been entitled to collect the debt associated with the mortgage note since July 18, 2019, and that the plaintiff has exercised its right to call due the balance of the note.

. . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked. . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 747, 196 A.3d 328 (2018).

In *Eichten*, this court addressed the scope of the doctrine of unclean hands and its application in the foreclosure context. See id., 746–50. In that case, the defendant raised several special defenses to the plaintiff's foreclosure complaint, including that "the plaintiff [was] guilty of unclean hands because, although she qualifie[d] for a [federal Home Affordable Modification Program (HAMP)] loan modification upon completion of her trial period payments, the plaintiff did not offer her a loan modification, but instead, placed her in a forbearance program without her consent . . . ." Id.,

734. In opposition to the plaintiff's motion for summary judgment as to liability, the defendant submitted a detailed affidavit in which she outlined the plaintiff's course of conduct in considering her loan modification application and asserted that, despite qualifying for the loan modification under all applicable HAMP guidelines and successfully completing a trial period plan (TPP), the plaintiff deprived her of the modification. Id., 739–40. Along with that affidavit, the defendant submitted additional documentation supporting her defense, including a supplemental directive issued by the United States Department of the Treasury that provided guidance to loan servicers making HAMP eligibility determinations. Id., 748. That directive outlined a two step process for HAMP modifications and indicated that, with successful completion of a TPP, borrowers would be offered a permanent loan modification. Id., 748–49. She also submitted the plaintiff's internal records documenting that she had met HAMP criteria for a modification, yet the plaintiff failed to offer her a permanent modification and ultimately deemed her ineligible for a modification, despite its prior acknowledgement of her eligibility and approval. Id., 740–41. The trial court rendered summary judgment for the plaintiff, concluding "that none of the defendant's special defenses raised a genuine issue of material fact that might defeat the plaintiff's cause of action." Id., 743.

On appeal, this court concluded that there was a genuine issue of material fact as to the defendant's unclean hands defense and, therefore, reversed the judgment of the trial court. Id., 746. We reasoned that "[t]he plaintiff's failure to establish that it adhered to the Treasury Department's directives, which appear to encourage that final determinations on whether to offer the borrower a loan modification be made before the end of the TPP, and the plaintiff's failure to provide an explanation as to its apparent internal approval of the

loan modification in March, 2011, which was not communicated to the defendant, create a genuine issue of material fact as to whether the defendant [could] prevail on her special defense of unclean hands. When viewing the evidence in the light most favorable to the defendant, the unexplained length of time it took the plaintiff to deny the defendant an offer of a permanent modification, almost twenty months . . . raises the question of whether the plaintiff treated the defendant in a fair, equitable and honest manner knowing that prolonged delay would place the defendant in an untenable financial situation, such that she could not possibly extricate herself to prevent foreclosure." Id., 749–50.

Although the defendant relies on *Eichten* and argues that the same analysis applies in the present case, such reliance is misplaced because the record here is markedly different. The defendant in *Eichten* provided sufficient evidence illustrating the plaintiff's review process and all determinations regarding her eligibility for a permanent loan modification, which evidence substantiated the assertions in her affidavit that she qualified for the permanent loan modification and that the plaintiff wrongfully had failed to offer her a permanent loan modification under the HAMP guidelines. Id., 739–41, 748–49. In the present case, however, the only evidence that the defendant submitted in support of his opposition to the plaintiff's motion for summary judgment was his affidavit. Relevant to his unclean hands defense, the defendant averred that, between June 4, 2018, and March 24, 2022, he submitted twenty-five applications to modify the mortgage, Carrington encouraged him to file those applications, Carrington told him that he would get his mortgage modified, his applications were often denied for technical reasons such as paperwork not being in order, and, after each denial, Carrington would encourage him to resubmit his application. Those bare allegations in his affidavit do not provide a basis

to infer that Carrington, as the plaintiff's agent, engaged in wilful misconduct with the purpose of prejudicing the defendant's rights. Although the defendant stated in his affidavit that the plaintiff has "engaged in wrongful conduct with respect to my mortgage modification applications and as a result [has] materially added to my debt including but not limited to added to interest, attorney's fees, costs, etc., and substantially prevented me from curing the default," he provided no evidence to substantiate that conclusory allegation. The defendant's unsupported allegations are insufficient to raise a genuine issue of material fact. See *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000) ("[a] conclusory assertion . . . does not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment").

Notably, there are no documents in the record demonstrating the plaintiff's allegedly improper handling of the defendant's loan modification applications. In particular, there is no evidence of any communications between the defendant and Carrington regarding his applications, no evidence as to the specific nature of the technical deficiencies identified in the defendant's applications, no evidence as to the effect of the technical deficiencies on Carrington's review of the loan modification applications, and no evidence indicating whether the loan modification applications were subjected to any corrective actions following their initial denial, such as rectification of technical deficiencies or reconsideration based on corrected information. In fact, the defendant attached none of the loan modification applications to his affidavit. Thus, unlike the defendant in *Eichten*, who submitted an abundance of documentary evidence that substantiated the assertions in her affidavit; see *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 739–41; the defendant here failed

to submit any supporting evidence to permit a reasonable inference of wrongdoing to establish a genuine issue of material fact regarding his unclean hands defense.

The present case is more analogous to *Homebridge Financial Services, Inc.* v. *Jakubiec*, 223 Conn. App. 517, 309 A.3d 1223 (2024). In *Jakubiec*, the plaintiff sought to foreclose a mortgage on real property owned by Thomas M. Jakubiec (decedent), who died two days after he had been served with process commencing the action. Id., 521–22. The trial court granted the plaintiff's motion to cite in as a defendant, among others, Robyn Jakubiec (Robyn), the decedent's widow. Id., 522. The plaintiff moved for summary judgment as to liability, contending that "[s]aid note and mortgage are now in default by virtue of nonpayment of the monthly installments of principal and interest due on July 1, 2013, and each and every month thereafter, and the plaintiff has exercised its option to declare the entire balance of said note due and payable." (Internal quotation marks omitted.) Id., 523. Robyn objected to the plaintiff's motion for summary judgment and filed an answer and special defenses, including, inter alia, unclean hands. Id. She alleged that "[t]he plaintiff misrepresented to the court that it was unable to verify, contact or locate anyone residing in the property subject to this action when in fact [Robyn] had actively contact[ed] the plaintiff and its agents to alert them to the circumstances of [the decedent's] passing and her occupancy of the property" and that "[t]he purpose of the plaintiff's misrepresentations were to blindside and ambush [her] with a judgment of foreclosure prior to her even having notice of any pleading or filing made with the court." (Internal quotation marks omitted.) Id., 537–38 n.18. Robyn further asserted that "the record is replete with numerous actions taken by the plaintiff requiring that

it be denied foreclosure. Among these included submitting a false affidavit as to the lack of knowledge as to the defendant's residence and whereabout[s]. These acts have included a refusal of trial payments, confusion of amounts due, repeated notices directed to the [decedent], checks written out to the [decedent], and material failure to comply with [the Emergency Mortgage Assistance Program, General Statutes §§ 8-265cc through 8-265kk]." (Internal quotation marks omitted.) Id., 528. The trial court rendered summary judgment as to liability for the plaintiff, concluding that Robyn failed to present evidence to support her special defense of unclean hands. Id., 523–24.

On appeal, this court affirmed the judgment of the trial court, reasoning that, "[a]lthough [Robyn] contends that [the mortgagee] 'lied' about its lack of knowledge of her whereabouts when the foreclosure action was commenced, she has not presented any evidence demonstrating that this was anything more than a mistake. Furthermore, [Robyn] failed to present evidence of the plaintiff's wilful misconduct that rose to the level of unclean hands with respect to, inter alia, the return of [her] partial payments during the modification trial period in 2019, issuing checks and correspondence to the decedent after his death, and the purportedly improper refusal to process modification paperwork." Id., 540. Accordingly, this court held that the trial court properly rendered summary judgment as to the defendant's unclean hands defense. Id., 542.

In the present case, as in *Jakubiec*, the defendant, on the basis of actions taken by the plaintiff with which he disagreed, argues that a fact finder could reasonably infer that the plaintiff engaged in those actions for the improper purpose of hindering his ability to rectify the default under the note and mortgage, and, as a result, substantially increased his debt. See *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 675, 212

A.3d 226 (2019) (explaining that "[a]llegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement of the note and mortgage" (citation omitted; internal quotation marks omitted)). The problem for the defendant is that he has submitted no evidence whatsoever that the rejection of his loan modification applications was improper. The only evidence he has submitted is a chronology of rejected applications and encouragement from Carrington that he reapply to correct any errors. Without some evidence that Carrington engaged in such conduct as a subterfuge to harm the defendant, the defendant's unclean hands defense is based on mere speculation, in which we will not engage. See *Perez* v. *Metropolitan District Commission*, 186 Conn. App. 466, 476, 200 A.3d 202 (2018) ("Although the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.)).

Simply put, because the defendant did not meet his burden of providing an evidentiary basis to establish the existence of a genuine issue of material fact, the court properly rejected the defendant's unclean hands defense in rendering summary judgment as to liability for the plaintiff.

II

The defendant next claims that the court improperly failed to consider his estoppel defense when determining the amount of the debt. Specifically, he claims that the court improperly accepted the plaintiff's affidavit of debt without an evidentiary hearing as to the amount of mortgage debt, despite his specific objection to the amount of the debt based on his sufficiently interposed estoppel defense. The plaintiff contends that the defendant's failures to present any evidence in support of his objection and to request an evidentiary hearing are fatal to his claim that the court erroneously accepted the plaintiff's affidavit of debt. We agree with the defendant.

We first set forth the applicable standard of review and relevant legal principles regarding the admissibility of affidavits of debt pursuant to Practice Book § 23-18 (a). "[T]he proper characterization of the trial court's ruling is clarified by examining the nature of an affidavit of debt and the function of . . . § 23-18 (a) in foreclosures. Without question, an affidavit of debt is hearsay evidence because it is an out-of-court statement, by an absent witness, that is offered to prove the truth of the amount of the debt averred in the affidavit. . . . [T]he purpose of § 23-18 (a) is to serve as an exception to the general prohibition of hearsay evidence when appropriate circumstances arise, namely, that the amount of the debt is not in dispute. . . . Therefore, the [defendant's] claim that the [trial court] erred in determining that § 23-18 (a) [applies] is most properly characterized as challenging the trial court's determination that an exception to the general prohibition of hearsay applies to the affidavit of debt.

"A trial court's decision to admit evidence, *if premised on a correct view of the law* . . . calls for the abuse of discretion standard of review. . . . In other

words, only after a trial court has made the *legal determination* that a particular statement . . . is subject to a hearsay exception, is it [then] vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought. . . . Therefore, a trial court's legal determination of whether Practice Book § 23-18 (a) applies is a question of law over which our review is plenary. . . .

"Practice Book § 23-18 (a) provides that, in any foreclosure action, where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto.

"Thus, to preclude the admission of an affidavit of debt pursuant to Practice Book § 23-18 (a) to establish the amount of mortgage debt, a defense to the mortgage debt must concern the *amount* of the debt. . . . [A] defense challenging the amount of the debt must be actively made to prevent the application of § 23-18 (a). . . . A defense is insufficient if it focuses on matters that are ancillary to the amount of the debt, such as whether the loan is in default, which is a matter of liability, or [matters] that attack the credibility of the affiant or defects in the execution of the affidavit itself. . . . Additionally, a defense to the amount of the debt must be based on some articulated legal reason or fact. . . . A defendant not only must object to the amount of the debt but must specifically object as to why the amount of the debt is incorrect: for example, whether late charges should have been waived or money had been advanced for taxes." (Citations omitted; emphasis

in original; internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Malick*, 347 Conn. 155, 163–65, 296 A.3d 157 (2023).

In the present case, the defendant filed an objection to the amount of the debt and challenged the $30,968.59 claimed by the plaintiff for interest and fees accrued between April 1, 2018, and April 2, 2023. In his objection, the defendant argued that his special defenses "show[ed] that the plaintiff by and through [Carrington] instructed the defendant to file twenty-five mortgage modification applications . . . then wrongfully denied his twenty-five applications. Throughout this period, while the defendant relied on the plaintiff's assurances, the plaintiff wrongfully increased the debt amount through interest, attorney's fees, and other costs. . . . It would be inequitable for the plaintiff to recover a debt total that was increased due to its own misconduct. Therefore, the defendant respectfully requests that the interest and property inspection fees, an amount of $30,968.59, be excluded from this court's finding of debt, and that this court refuse to award attorney's fees that accrued because of the plaintiff's wrongful conduct." (Citations omitted.) Thus, the defendant "not only . . . object[ed] to the amount of the debt but [also] . . . specifically object[ed] as to why the amount of the debt is incorrect" on the basis of his estoppel based defenses. *JPMorgan Chase Bank, National Assn.* v. *Malick*, supra, 347 Conn. 165. Consequently, the defendant "sufficiently interposed a defense as to the amount of the debt," which prevented the plaintiff from relying on the affidavit of debt to prove the amount of the debt pursuant to Practice Book § 23-18 (a). Id., 176.

Although the plaintiff contends that the defendant failed to provide evidence in support of his objection, our Supreme Court recently rejected that same contention in *JPMorgan Chase Bank, National Assn.* v. *Malick*, supra, 347 Conn. 177, noting that, "[a]lthough

the defendant did not provide official records from the town tax collector to support his calculation of the amount of property tax he owed, we have never required, and the language of Practice Book § 23-18 (a) does not require, a defendant to provide any evidence." The court explained "that, in a foreclosure action, it is the plaintiff's burden to establish the amount of the debt. . . . [Section] 23-18 (a) provides plaintiffs with an efficient method of meeting their burden to establish the amount of the debt if no defense is interposed. Although it is the defendant's burden to sufficiently interpose a defense to the claimed amount of the debt, once a defense is interposed, the burden remains on the plaintiff to prove the amount of the debt. At no point does the burden shift to the defendant to prove that the plaintiff's affidavit is incorrect. In other words, once the defendant has sufficiently interposed a defense as to the amount of the debt, the plaintiff is required to satisfy its burden under the Connecticut Code of Evidence, without the benefit of § 23-18 (a). The purpose of this procedure is to allow a defendant to cross-examine the witnesses presented on the issue of the amount of the debt, as well as to allow a defendant an opportunity to present his or her own evidence." (Citation omitted.) Id., 176.

The defendant followed this precise procedure in the present case and, contrary to the plaintiff's argument, was not required to present evidence to preserve his objection to the plaintiff's affidavit of debt. For the same reason, we are not persuaded by the plaintiff's alternative argument that the defendant had to request an evidentiary hearing in order to preserve his objection to the court's reliance on the affidavit of debt. In other words, because the defendant's objection to the amount of the debt precludes the application of Practice Book § 23-18 (a) and because it was the plaintiff's burden to prove the amount of the debt, the defendant was not

required to request an evidentiary hearing for the plaintiff to present its evidence in support of its motion for judgment. See id., 178 ("At all times, it was the plaintiff's burden to prove the amount of the debt. The defendant sufficiently objected to the amount of [the debt], and it was not his burden to provide further evidence to prove his objection." (Internal quotation marks omitted.)).

Accordingly, the defendant in the present case sufficiently objected to the amount of interest and fees, and he was not required to provide evidence to support his objection for the purpose of interposing a defense to the amount of the debt in accordance with Practice Book § 23-18 (a). Consequently, we conclude that the court improperly relied solely on the plaintiff's affidavit of debt to determine the amount of the debt.[8]

The judgment is reversed with respect to the order of foreclosure by sale and the case is remanded for an evidentiary hearing on the amount of the debt; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] We note that, in its memorandum of decision on the motion for summary judgment, the court deemed the defendant's estoppel defense "legally sufficient" but stated that the estoppel defense "does not dispel of the defendant's liability for defaulting on the mortgage but, rather, only indicates that the amount of interest, fees, and other costs has increased due to the plaintiff's alleged conduct." Thus, although the court recognized the legal viability of the defendant's estoppel defense with respect to the debt when it rendered summary judgment as to liability for the plaintiff, it later failed to consider the specific objection based on that defense when it overruled the defendant's objection to the amount of the debt as set forth in the plaintiff's affidavit of debt and, instead, relied on the affidavit when it determined the amount of the debt. Given that the court recognized the legitimate dispute as to the amount of the debt at the summary judgment stage, it should have required the plaintiff to present evidence at a hearing to establish the amount of the debt when the defendant raised that issue again in response to the plaintiff's affidavit of debt.